CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, Esq., SBN 292673
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Martin Vogel,**<br><br>          Plaintiff,<br><br>     v.<br><br>**Kafco Partnership,** a California Limited Partnership; and Does 1-10,<br><br>          Defendants | **Case:** 2:19-cv-00656-R-MRW<br><br>**Plaintiff's Memorandum of Points and Authorities**<br><br>Date:     September 16, 2019<br>Time:    10:00 a.m.<br>Ctrm:    880<br><br>Hon. Judge Manuel L. Real |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES........................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

   I.  PRELIMINARY STATEMENT ......................................................... 1

   II.  RELEVANT FACTS ............................................................................ 1

   III.  LEGAL STANDARD................................................................... 3

   IV.  THE LACK OF ACCESSIBLE FACILITIES ............................. 3

      A.  Plaintiff is Disabled.................................................................... 5

      B.  Defendant Owns and Operates a Place of Public Accommodation 6

      C.  The Restaurant Had Barriers That Were Readily Removed........ 6

      D.  The Barriers Are and Were Readily Achievable to Remove....... 8

      E.  The Plaintiff Encountered This Violation and Is Being Deterred From Patronage........................................................................ 9

V.  THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW ............................................................ 9

   VI.  REMEDIES................................................................................... 9

   VII.  CONCLUSION........................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.
   603 F.3d 666 (9th Cir. 2010) ................................................................ 4

Celotex Corp. v. Catrett
   477 U.S. 317 (1986) ............................................................................ 3

Chapman v. Pier 1 Imports (U.S.) Inc.
   631 F.3d 939 (9th Cir. 2011) ........................................................... 4, 7

Cullen v. Netflix, Inc.,
   880 F.Supp.2d 1017 (N.D. Cal. 2012) .............................................. 10

*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir.
   2008) ................................................................................................ 10

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) ........................ 10

Moeller v. Taco Bell Corp.
   816 F.Supp.2d 831 (N.D. Cal. 2011) .................................................. 4

*Molski v. M.J. Cable, Inc.,*
   *481 F.3d 724 (9th Cir. 2007)* ....................................................... 10, 11

Rush v. Denco Enterprises, Inc.,
   857 F. Supp. 2d 969 (C.D. Cal. 2012) ................................................ 6


**Statutes**

42 U.S.C. § 12102(2)(A) ........................................................................ 5

42 U.S.C. § 12188(a) ............................................................................. 5

42 U.S.C. §§ 12183(a)(2) ................................................................... 4, 5

Cal. Civ. Code § 55.56(b) .................................................................... 10

CBC §11B-502.3.3 ................................................................................ 8

Civ. Code § 51 (f) .................................................................................. 9

**Other Authorities**

1991 Standards § 4.1.2(5) .......................................................................... 7

1991 Standards §4.6.2 ............................................................................... 7

2010 Standards 502.4 ................................................................................ 7

Department of Justice, Technical Assistance Manual on the American
   with Disabilities Act (BNA) §§ III-4.4100 (1991) ................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Martin Vogel is a paraplegic who cannot walk and uses a wheelchair for mobility. He brought this action because Defendant has failed to provide an accessible parking space and path of travel at their property. This is a violation of the ADA. In this motion, Plaintiff seeks an Order requiring Defendant to provide and maintain accessible parking and path of travel at the facility, as defined by the ADA, as well as a single statutory penalty of $4,000. Plaintiff respectfully requests this Court grant his motion.

## II. RELEVANT FACTS

Plaintiff Martin Vogel is a T3 paraplegic who cannot walk and who uses a wheelchair for mobility. (SUF #1). Mr. Vogel has a disabled persons parking placard issued by the State of California. He drives a specially equipped and modified van. His van deploys a ramp so that he can wheel in and out of his vehicle. (SUF #2).

The Subway location at issue is located at or about 1900 Hillhurst Avenue, Los Angeles, California ("Restaurant"). (SUF #3). Defendant Kafco Partnership, is and was in April 2018 and October 2018, the owner of the property located at 1900 Hillhurst Avenue, Los Angeles, California. (SUF #4). The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment. (SUF #5).

On April 4, 2018, April 9, 2018, and October 15, 2018, Mr. Vogel went to the Restaurant to eat. (SUF #6). As Mr. Vogel drove into the parking lot of the Restaurant, he discovered that there were parking spaces provided for customers. (SUF #7).

There was one parking space marked and reserved for use by persons with disabilities. However, the parking stall and access aisle were not level with each other and were noticeably sloped. (SUF #8). There was also no "NO PARKING" warning in the access aisle. (SUF #9).

Mr. Vogel needs the parking stall and access aisle to be flat and level with each other in order to safely transfer to and from his van in his wheelchair using his ramp. (SUF #10). Because the designated accessible parking space was not accessible, he had to park across the street at the Bank of America and on the street during my visits. (SUF #11). Moreover, Mr. Vogel found that the path of travel along the walkway leading to the entrance of the Restaurant had slopes. (SUF #12). The Restaurant's inaccessible parking space and path of travel caused Mr. Vogel to experience difficulty, discomfort inconvenience, embarrassment, anxiety and frustration. (SUF #13).

On January 22, 2019, Evens Louis, an investigator for the plaintiff, conducted an investigation of the Restaurant. (SUF #14). Mr. Louis found that there was a parking space marked and reserved for persons with disabilities in the parking lot serving the Restaurant. (SUF #15). However, the parking stall and access aisle of the designated accessible parking space were not level with each other. The access aisle had slopes up to 3.6% and the parking stall had slopes up to 2.3%. (SUF #16). He also found that there was no "NO PARKING" lettering in the access aisle. (SUF #17). Mr. Louis also measured slopes of up to 4.2% within the path of travel along the walkway leading to the entrance of the Restaurant. (SUF #18).

Mr. Vogel is deterred from visiting the Restaurant because of his knowledge of the lack of accessible parking and accessible path of travel. (SUF #19). Mr. Vogel has been training in this part of Los Angeles for

over 20 years. He completes a lot of miles on the hill up Hillhurst Avenue, where the Restaurant is located, as well as near Griffith Park and the LA Zoo. Thus, he is in this area frequently and has lunch and shops along Hillhurst Avenue on a regular basis. (SUF #20).

He would like the ability to safely and independently park and access the Restaurant. (SUF #21). Once the violations are removed, he plans to visit the Restaurant on a regular basis or whenever the need arises. (SUF #22).

### III.  LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

### IV.  THE LACK OF ACCESSIBLE FACILITIES

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies

not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports* (U.S.) Inc., 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) citing, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus,

the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id*.;
3. The defendant must be a responsible party, i.e., owner, operator, lessor or lessee. *Id*.;
4. The defendant's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendant failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Vogel's civil rights were violated because the Defendants failed to provide accessible facilities at the Restaurant. Plaintiff will discuss each element, seriatim.

### A. Plaintiff is Disabled

Mr. Vogel is a T3 paraplegic. He cannot walk and uses a wheelchair for mobility. (SUF #1). Thus, there can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given Mr. Vogel's inability to walk, this is not a genuine issue.

### B. Defendant Owns and Operates a Place of Public Accommodation

The Restaurant is an establishment serving food or drinks. Restaurants, bars, and other establishments serving food or drink are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(B). Therefore, the Restaurant is a place of public accommodation, which Defendant admits. (SUF #5). Defendant owned the property on which the Restaurant is located during Mr. Vogel's visits, and do so currently. (SUF #4). Defendant, therefore, had an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

### C. The Restaurant Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D.

Cal. 2012) (internal cites omitted). "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

### 1. *Lack of Accessible Parking Space*

The lack of an accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5). Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards §4.6.2. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards §502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 (2.08%) slope is permitted. 2010 Standards §502.4.

Further, to qualify as a reserved accessible parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, the words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading

access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials." CBC §11B-502.3.3.

Here, on the date of Mr. Vogel's visits, and as subsequently confirmed by Mr. Louis' investigation, the designated accessible parking space serving the Restaurant failed to meet the above requirements. As outlined above, the access aisle had slopes measuring up to 3.6% and the parking stall had slopes up to 2.3%, exceeding the maximum permitted by ADA standards. (SUF #16). Additionally, the access aisle failed to display the required "NO PARKING" lettering. (SUF #17). Defendant's failure to provide a compliant accessible parking space is a violation of the ADA.

### 2. *Lack of Accessible Path of Travel*

The lack of an accessible path of travel constitutes a barrier. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, nowhere shall the cross slope of an accessible route exceed 2.1%. 2010 Standards § 403.3.

Here, Mr. Louis also measured slopes of up to 4.2% within the path of travel along the walkway leading to the entrance of the Restaurant. (SUF #18). Defendant's failure to provide an accessible path of travel is a violation of the ADA.

### D. **The Barriers Are and Were Readily Achievable to Remove**

There is no question about whether removal of these barriers was readily achievable. A cursory review of the Code of Federal Regulations indicates that this type of action, *e.g.*, installing ramps and creating designated accessible parking spaces, are the type identified as presumed to be readily achievable. 28 C.F.R. § 36.304(b)(1 & 18).

### E. The Plaintiff Encountered This Violation and Is Being Deterred From Patronage

Mr. Vogel personally encounter the violations outlined above. He faces the threat of continued and repeated violations, and has been deterred from patronizing the Restaurant as a result.

In sum, there has been a violation of the American with Disabilities Act.

## V. THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendant violated the ADA. Thus, there has been a per-se violation of Unruh.

## VI. REMEDIES

The Plaintiff seeks both injunctive relief and statutory damages. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2). "Allegations that a plaintiff has visited a public accommodation on a prior

occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

Here, Mr. Vogel has been training in this part of Los Angeles for over 20 years. He completes a lot of miles on the hill up Hillhurst Avenue, where the Restaurant is located, as well as near Griffith Park and the LA Zoo. Thus, he is in this area frequently and has lunch and shops along Hillhurst Avenue on a regular basis. He would like the ability to safely and independently park and access the Restaurant. Once the violations are removed, he plans to visit the Restaurant on a regular basis or whenever the need arises. Thus, Plaintiff has standing to seek the fix. (SUF #20-22).

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b).

In the present case, all of these elements are met. Mr. Vogel personally encountered the access standards violations during his visits on April 4, 2018, April 9, 2018, and October 15, 2018. However, he seeks just a single statutory penalty. There are no genuine issues in dispute here and the Plaintiff is entitled to the statutory award of $4,000 under the Unruh Civil Rights Act for each personal encounter and deterrence. "The

litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Plaintiff seeks an award of $12,000.

## VII.  CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.

Dated: July 29, 2019                           Center for Disability Access

                                               By: */s/ Isabel Rose Masanque*
                                                   Isabel Rose Masanque
                                                   Attorneys for Plaintiff